IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

SS RICHMOND LLC, *et al.*,
    Plaintiffs,

    v.                                   Civil No. 3:22cv405 (DJN)

CHRISTOPHER A. HARRISON, *et al.*,
    Defendants.

## MEMORANDUM OPINION

This matter comes before the Court on Plaintiffs' Memorandum in Support of Their Request for Prejudgment Interest and Attorneys' Fees ("Memorandum" (ECF No. 171)), requesting that this Court award prejudgment interest at a rate of six percent starting June 8, 2023, and attorneys' fees and costs related to enforcing the Settlement Agreement, as well as those incurred in moving for attorneys' fees. For the reasons stated below, the Court will GRANT IN PART and DENY IN PART Plaintiffs' request for prejudgment interest and attorneys' fees and costs. The Court will GRANT an award of prejudgment interest at an annual rate of six percent. However, Plaintiffs are entitled to prejudgment interest starting June 9, 2023 — the date that the payment became overdue — until judgment was entered on September 19, 2023. In addition, the Court will GRANT a reduced award of Fifty Thousand, Three-Hundred Eighty Dollars ($50,380.00) in attorneys' fees and Eight-Hundred Ninety-One Dollars and Eighty-Six Cents ($891.86) in costs, for a total of Fifty-One Thousand, Two-Hundred Seventy-One Dollars and Eighty-Six Cents ($51,271.86).

## I.    BACKGROUND

On May 31, 2022, Plaintiffs SS Richmond LLC and MK Richmond LLC (collectively "Plaintiffs") filed their Complaint (ECF No. 1), alleging the following claims against Defendants Christopher A. Harrison, The C.A. Harrison Companies, LLC, CAH Model Tobacco, LLC and McKenzie Blake Development Company, LLC (collectively "Defendants"):  (1) violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act; (2) securities fraud; (3) dissociation under Virginia Code § 13.1-1040.1(5); and (4) common law breach of contract, fraud, and fraud by concealment claims.  Defendants brought three counterclaims against Plaintiffs in the same action: (1) dissociation of Plaintiffs; (2) a request for a declaration of rights as to the validity of an Amended Operating Agreement pertinent to the Model Tobacco Project (the "Project"); and (3) a breach of contract claim.  (ECF No. 25.)

The parties agreed to settle this matter for Six Million Dollars ($6,000,000.00) ("the Purchase Price") to be paid on or before June 8, 2023, in exchange for Plaintiffs' Membership Interests in the Project, as well as various other terms set forth in the Settlement Agreement executed on April 21, 2023.  (ECF No. 136, Ex. A at 3.)  On May 1, 2023, the parties filed a Stipulation of Dismissal, (ECF No. 129), and the next day, the case was dismissed with prejudice.  (ECF No. 130.)  In closing the case, the Court retained "jurisdiction over this matter for the purpose of enforcement of the settlement, including ordering the case to be reinstated and awarding the prevailing party its costs, to include reasonable attorneys' fees."  (*Id.*)

On June 7, 2023, one day before the payment deadline, counsel for Defendants informed Plaintiffs that Defendants would "not be in a position to pay the $6 million" by the agreed upon date.  (ECF No. 136, Ex. B)  However, Defendants claimed that they had executed an agreement with a third party to secure $6 million and that payment would be forthcoming.  (*Id.*)  On

June 28, 2023, Plaintiffs filed their Motion to Enforce the Parties' Settlement Agreement ("Motion to Enforce" (ECF No. 133)), seeking an award of the Purchase Price owed under the Settlement Agreement, plus interest, costs and attorneys' fees.  On August 18, 2023, Magistrate Judge Mark Colombell conducted a hearing on the matter, and later that same day, he issued an Order granting the Motion to Enforce.  (ECF No. 154.)  However, because it was unclear whether the parties consented to the Magistrate Judge rendering a final judgment in this matter, Magistrate Judge Colombell vacated the Order granting the Motion to Enforce, (ECF No. 155), and issued a Report and Recommendation ("R. & R." (ECF No. 165)) for consideration by this Court.

On September 18, 2023, after finding Defendants' objections meritless, this Court adopted the R. & R. as the opinion of the Court and granted Plaintiffs' Motion to Enforce.  (ECF No. 164 at 2.)  In addition, the Court directed Plaintiffs to file pleadings on the issues of Plaintiffs' entitlement to prejudgment interest and attorneys' fees.  (*Id.*)  On September 19, 2023, the Court entered judgment against Defendants and in favor of Plaintiffs in the amount of the Purchase Price, plus post-judgment interest at the applicable federal rate under 28 U.S.C. § 1961, from the date of entry until paid.  (ECF No. 165.)  To the Court's knowledge, Defendants still have not paid the Purchase Price to Plaintiffs.

On October 2, 2023, Plaintiffs submitted their Memorandum (ECF No. 171) in support of their request for prejudgment interest and attorneys' fees.  On October 16, 2023, Defendants filed their Memorandum in Opposition to Plaintiffs' Request for Prejudgment Interest and Fees ("Opposition" (ECF No. 173)).  On October 23, 2023, Plaintiffs filed their Reply in Support of Their Request for Prejudgment Interest and Attorneys' Fees ("Reply" (ECF No. 174)), rendering this matter ripe for review.

3

## II.   ANALYSIS

**A.   Plaintiffs are entitled to prejudgment interest.**

"Virginia law governs the award of prejudgment interest in a diversity case." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 633 (4th Cir. 1999). Under Virginia law, a district court "may provide for interest on any principal sum awarded, or any part thereof, and fix the period at which the interest shall commence." Va. Code § 8.01-382. The decision to award prejudgment interest pursuant to section 8.01-382 lies within the sound discretion of the trial court. *Hannon Armstrong & Co. v. Sumitomo Tr. & Banking Co.*, 973 F.2d 359, 369 (4th Cir. 1992). In exercising its discretion, district courts "must weigh the equities in a particular case to determine whether an award of prejudgment interest is appropriate." *Moore Bros. Co. v. Brown & Root, Inc.*, 207 F.3d 717, 727 (4th Cir. 2000).

Courts consider two competing rationales when making an equitable determination. *Wells Fargo Equip. Fin., Inc. v. State Farm Fire & Cas. Co.*, 823 F. Supp. 2d 364, 366 (E.D. Va. 2011). First, the party "denied use of money to which it is rightfully entitled[] should be compensated for that loss, and full compensation includes interest." *Id.*; *see also Upper Occoquan Sewage Auth. v. Blake Const.*, 655 S.E.2d 10, 22 (Va. 2008) ("The justification for the award of interest on damages . . . in a civil lawsuit[] has been recognized since the earliest days of this Commonwealth: '[N]atural justice [requires] that he who has the use of another's money should pay interest on it.'"). Second, the award of prejudgment interest should not penalize defendants for exercising their right to litigate any bona fide legal questions. *Wells Fargo Equip. Fin.*, 823 F. Supp. 2d at 367. The existence of a bona fide dispute, however, does not preclude an award of prejudgment interest; rather, it remains a factor to consider in making an equitable determination. *Id.*; *see also Gill v. Rollins Protective Servs. Co.*, 836 F.2d 194, 199 (4th Cir.

4

1987) (indicating that the Virginia prejudgment interest statute contains no language creating a "bona fide legal dispute" exception). Here, the Court finds that the equities weigh in favor of awarding prejudgment interest.

First, Defendants have denied Plaintiffs the use of money to which they are rightfully entitled for months — since June 8, 2023, to be exact. Defendants argue that Plaintiffs "obtained exactly what they requested, a $6 million judgment, nothing more, nothing less." (Opp. at 9.) The Court disagrees. Under the terms of the Settlement Agreement, specifically section 2(a), Defendants were obligated to pay the Purchase Price to Plaintiffs on or before June 8, 2023. (ECF No. 136, Ex. A at 3.) Defendants failed to do so and, as of the date this matter became ripe for review, still had not fulfilled their end of the bargain. (Reply at 3 (stating that "Plaintiffs *still* have not received their $6 million payment").) Because the Settlement Agreement designated June 8, 2023 as the date by which Defendants were required to deliver the Purchase Price and Defendants failed to pay Plaintiffs in the time prescribed, the first consideration weighs in favor of granting an award of prejudgment interest.

Second, the absence of a legitimate dispute over payment of the Purchase Price under the Settlement Agreement weighs in favor of an award of prejudgment interest. Defendants do not even attempt to argue that they were exercising their right to litigate any bona fide legal questions. (*See* Opp. at 9–10.) To the contrary, Defendants concede that "Defendants are late with payment." (Opp. at 1.) And Defendants failed to pay the Purchase Price to Plaintiffs on or before June 8, 2023, as required under the terms of the Settlement Agreement. (*See* ECF No. 145 at 1 (acknowledging "the delay in the execution of the Settlement Agreement"); R. & R. at 6 (discussing Defendants' failure to pay their financial obligation, "despite their previous representations that a deal would be complete first by August 2, 2023 and then by August 17,

5

2023").)  Due to the absence of a bona fide legal dispute, the second rationale also weighs in favor of awarding prejudgment interest.

Accordingly, the Court finds that Plaintiffs are entitled to an award of prejudgment interest starting June 9, 2023 — the date at which payment became overdue — until judgment was entered on September 19, 2023.  *See Mulugeta v. Ademachew*, 407 F. Supp. 3d 569, 594 (E.D. Va. 2019) (awarding prejudgment interest on the unpaid installments of the purchase price from the dates that those payments became overdue).  By statute, prejudgment interest shall be set at an annual rate of six percent.  Va. Code § 6.2-302.

### B.    Attorneys' Fees

#### 1.  An award of attorneys' fees is appropriate.

The American Rule provides that the prevailing party may not recover attorneys' fees from the unsuccessful party absent statutory authority or an agreement to shift fees.  *Hensley v. Alcon Lab'ys, Inc.*, 277 F.3d 535, 543 (4th Cir. 2002).  Under the bad faith exception to the American Rule, however, a district court may shift attorneys' fees when the opposing party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Andrews v. Am.'s Living Ctrs., LLC*, 827 F.3d 306, 311 (4th Cir. 2016) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59 (1975)).  Here, the Court finds that an award of attorneys' fees is appropriate because of demonstrable bad faith on the part of Defendants in delaying judgment.

Defendants' vexatious and dilatory tactics have been apparent during the course of this litigation.  Before any discovery, Defendants filed their First Motion for Sanctions, (ECF No. 46), which was accompanied by a 21-page memorandum and over 700 pages in exhibits. (ECF No. 47.)  Three weeks later, Defendants filed their Second Motion for Sanctions, (ECF No. 54), which was also supplemented with nearly 700 pages of extraneous documents.  (ECF

6

No. 55.)  Because Defendants were attempting to try the case on the merits under the guise of sanctions motions, this Court denied both motions as "frivolous."  (ECF Nos. 69, 73.)

Defendants have consistently obstructed Plaintiffs' efforts to move this action forward. Besides engaging in frivolous motions practice, they also refused to participate in a Rule 26(f) conference.  (ECF Nos. 61, 62.)  Not until Plaintiffs filed a motion to compel did Defendants comply with their responsibilities under Rule 26(f).  (*See* ECF No. 63.)  Moreover, the Joint Proposed Discovery Plan (ECF No. 68) submitted by the parties indicates that Defendants made a lackluster effort to meaningfully engage in discussion at the Rule 26(f) conference. Accordingly, this Court warned Defendants that further stalling would lead to "sanctions . . . headed [their] way."  (ECF No. 73 at 2:24–3:3.)

Following significant litigation, the parties engaged in a settlement conference and executed a Settlement Agreement on April 21, 2023.  (ECF No. 136, Ex. A.)  The Settlement Agreement required Defendants to pay the Purchase Price to Plaintiffs on or before June 8, 2023. (*Id.* § 2(a).)  On June 7, 2023, one day before the payment deadline, counsel for Defendants informed Plaintiffs that Defendants would "not be in a position to pay the $6 million" by the agreed upon date.  (ECF No. 136, Ex. B.)  Defendants further claimed that they had executed an agreement with a third party to secure $6 million and anticipated closing "no later than July 17, 2023."  (*Id.*)  In actuality, Defendants had executed a non-binding Letter of Intent to Purchase, which outlined a mere proposal for obtaining the necessary funds.  (ECF No. 136, Ex. D.) Nonetheless, Defendants insisted that payment would be forthcoming.  (*See* R. & R. at 6 ("On June 12, 2023, the parties conducted a telephonic status conference with the [Magistrate Judge], during which Defendants reiterated their intent to provide Plaintiffs with the Purchase Price payment in exchange for Plaintiff's Membership Interests.").)

On June 28, 2023, Plaintiffs moved Magistrate Judge Colombell for entry of judgment enforcing the Settlement Agreement. (ECF No. 133.)  In their opposition to Plaintiffs' Motion to Enforce filed on July 12, 2023, Defendants reiterated that the "transaction [was] on track to close" but averred that the purchase contract would close on or before August 2, 2023.  (ECF No. 145 at 1.)  Defendants further urged the Magistrate Judge to "stay consideration of the Motion to Enforce . . . until August 11, 2023, to facilitate a final resolution" or "wait until August 11, 2023, to enter any judgment to allow time to complete the transaction." (*Id.* at 1–2.)  During a status hearing before the Magistrate Judge on July 27, 2023, however, Defendants reported that the transaction would close no later than August 17, 2023.  (*See* R. & R. at 6.)

On August 18, 2023, after the latest deadline came and passed with still no payment by Defendants, the Magistrate Judge held a hearing on Plaintiffs' Motion to Enforce. (*Id.*)  While the transaction with the third-party buyer had yet to close, counsel for Defendants insisted that "the deal was likely to be completed soon." (*Id.*)

On August 23, 2023, the Magistrate Judge issued an R. & R. (ECF No. 156) for consideration by this Court.  At the eleventh hour, Defendants raised objections to the R. & R. ("Objections" (ECF No. 157)), asserting new arguments that they had not presented to the Magistrate Judge. (*Compare* ECF No. 145 at 3–7 (opposing Plaintiffs' Motion to Enforce), *with* Objs. (objecting on different grounds).)  Finding that the objections lacked merit, this Court accepted and adopted the R. & R. as the opinion of the Court on September 18, 2023. (ECF No. 164 at 2.)  On September 19, 2023, the Court entered judgment against Defendants and in favor of Plaintiffs in the amount of the Purchase Price, plus post-judgment interest at the applicable federal rate under 28 U.S.C. § 1961, from the date of entry until paid. (ECF No. 165.)

As the protracted history demonstrates, Defendants have claimed that payment will be forthcoming for nearly five months.  Yet, despite their repeated representations to both Plaintiffs and the Court, Defendants still have not satisfied their obligation to pay the Purchase Price to Plaintiffs.  Even while acknowledging their "delay in the execution of the Settlement Agreement," Defendants opposed Plaintiffs' Motion to Enforce and objected to the R. & R. on grounds that were not raised before the Magistrate Judge.  Defendants' bad-faith efforts to delay entry of judgment have not only required Plaintiffs to expend significant time and labor to enforce the Settlement Agreement, but they have also wasted judicial resources.  Accordingly, the Court finds that an award of attorneys' fees and costs is appropriate in this case.

Moreover, under the terms of the Settlement Agreement, the prevailing party was authorized to recover reasonable attorneys' fees and expenses incurred in enforcing the settlement.  Section 13, titled "Enforcement; Legal Fees," provided that "[i]n the event a lawsuit is filed in connection with this Agreement, . . . the party prevailing in such suit shall be entitled to recover . . . reasonable attorneys' fees and expenses incurred in such suit."  (ECF No. 136, Ex. A at ¶ 13.)  Here, Plaintiffs chose to enforce the Settlement Agreement by filing a Motion to Enforce, rather than initiating a separate lawsuit.  By electing the more economical enforcement mechanism — a sound decision in light of Defendants' bad faith attempts to delay payment — Plaintiffs facilitated swifter resolution and minimized litigation fees.  While the fees provision in the Settlement Agreement refers to "the event a lawsuit is filed," the parties' intent to award fees in the event of an enforcement dispute is supported by the history of the parties' negotiations as well as the Memorandum of Understanding, which allowed the Court to "award the prevailing party its costs, including reasonable attorneys' fees." (Mem. Ex. A-1 at ¶ 5.)  Because the parties clearly contemplated the availability of attorneys' fees if the settlement had to be enforced and

section 13 of the Settlement Agreement reflects this intent, Plaintiffs are also entitled to attorneys' fees and costs under the Settlement Agreement.

### 2. Plaintiffs are entitled to reduced attorneys' fees and costs.

As Plaintiffs are entitled to attorneys' fees, it becomes necessary to determine what constitutes "reasonable" fees in this case. Plaintiffs request an award in the amount of Two Hundred Thirty-Six Thousand, Six Hundred Forty-One Dollars and Eighteen Cents ($236,641.18) for attorneys' fees and expenses related to enforcing the Settlement Agreement, as well as those incurred in litigating attorneys' fees. (Reply at 9, 11.) For the following reasons, the Court will grant attorneys' fees and costs sought by Plaintiffs, but at a reduced amount.

The court evaluates the reasonableness of attorney's fees by first determining the "lodestar" figure, which is defined as "a reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. Mills Corp.*, 549 F.3d 313, 320–21 (4th Cir. 2008). In determining what constitutes a reasonable billing rate and number of hours, the Fourth Circuit has directed courts to consider twelve factors, commonly known as the *Johnson* factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978) (adopting twelve factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989)). Next, the court must "subtract fees for

10

hours spent on unsuccessful claims unrelated to successful ones." *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013). Lastly, the court should award "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id.*

### a. Reasonable Hourly Rate

Defendants argue that Plaintiffs fail to establish the reasonableness of their attorneys' fees. (Opp. at 1.) Specifically, as to hourly rates, Defendants assert that "[c]harging $1,690 for partners, $1,305 for associates, and $550 for paralegals for a post-settlement motion is not reasonable in accordance with the Court's prior decisions and the Richmond legal market." (Opp. at 1.) The Court agrees and finds that Plaintiffs have failed to carry their burden of proof in showing that the hourly rate sought for each of their attorneys was reasonable. Consequently, based on the Court's own knowledge and experience about the quality of representation provided by counsel from Quinn Emmanuel and consideration of the *Johnson* factors, the Court concludes that $400 and $650 constitute reasonable rates for associates and the lead partner, respectively.

The fee applicant bears the burden of establishing the reasonableness of the requested amount, "both by showing the reasonableness of the rate claimed and the number of hours spent." *Dewberry Eng'rs, Inc. v. Dewberry Grp., Inc.*, 2022 WL 20804194, at *2 (E.D. Va. July 29, 2022), *aff'd*, 77 F.4th 265 (4th Cir. 2023). The Fourth Circuit has recognized that:

> [D]etermination of the hourly rate will generally be the critical inquiry in setting the reasonable fee . . . . In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award.

*Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) (internal quotation marks omitted). The Fourth Circuit has held that "affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community" constitute

sufficient specific evidence of prevailing market rates. *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 245 (4th Cir. 2009).

As a preliminary matter, the Court must first address whether Plaintiffs' counsel are entitled to out-of-district rates. In determining reasonable hourly rates, district courts ordinarily look to the prevailing market rates in the community in which the court sits. *Rum Creek Coal Sales v. Caperton*, 31 F.3d 169, 179 (4th Cir. 1994). Nevertheless, the Fourth Circuit acknowledged that "the complexity and specialized nature of a case may mean that no attorney, with the required skills, is available locally." *Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313, 317 (4th Cir. 1988). In such instances, a court may apply out-of-town rates if the fee applicant demonstrates that (1) adequate local counsel was genuinely unavailable and (2) the party acted reasonably in choosing counsel from elsewhere. *Id.* at 317–18; *Gilliam v. Allen*, 62 F.4th 829, 850 (4th Cir. 2023); *see also SunTrust Mortg., Inc. v. AIG United Guar. Corp.*, 933 F. Supp. 2d 762, 770 (E.D. Va. 2013) (explaining that the burden rests on the fee applicant to establish the exception).

Here, Plaintiffs have failed to rebut the presumption that the hourly rates should be derived from the community in which the court sits. While Plaintiffs argue that this case has factual connections to Washington, D.C. and that the underlying case involved "complicated, high-stakes claims of financial fraud and RICO claims," (Reply at 6), they present no evidence that a local attorney could not have provided competent representation. *See Rehab. Ass'n of Va., Inc. v. Metcalf*, 8 F. Supp. 2d 520, 527 (E.D. Va. 1998) ("To justify the necessity of obtaining out-of-town counsel, Plaintiff was required to present evidence that it tried and was unable to obtain a local attorney who could provide competent representation."). Because Plaintiffs have not made the requisite showing to apply out-of-town rates, the Court will consider the proper

12

market from which to determine reasonable hourly rates as the market where the Court sits —
Richmond, Virginia. *Id.*

As to the issue of whether Plaintiffs produced adequate specific evidence of prevailing
market rates, the Court finds that Plaintiffs' evidence fails to support the requested hourly rates.
In support of their burden to establish the prevailing market rate of attorneys' fees in the relevant
community where the district court sits (*i.e.*, the Richmond Division of the Eastern District of
Virginia), Plaintiffs: (1) filed attorney billing records and an affidavit of the lead counsel of the
firm representing them; (2) pointed to several fee awards by courts across the nation; and (3)
cited to *American Lawyer* and *Bloomberg Law* articles indicating that large law firm rates exceed
$1000 per hour. (Mem. at 17–18; Mem. Ex. A.) Notably, Plaintiffs did not file any affidavits of
attorneys outside of the law firm Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn
Emmanuel") regarding the prevailing market rates in Richmond for similar work.

The cases to which Plaintiffs point to constitute insufficient specific evidence of
prevailing market rates. Notably, while Plaintiffs assert that "'Big Law' D.C. firms like Quinn
Emmanuel litigate in the Eastern District of Virginia regularly," (Reply at 8), they proffered no
cases concerning fee awards in this District. (*See* Mem. at 17 n.4.) Of the numerous cases
collected by Plaintiffs, *Proofpoint, Inc. v. Vade Secure, Inc.*, 2020 WL 7398791 (N.D. Cal. Dec.
17, 2020), constitutes one of the more helpful cases to Plaintiffs' position. *Id.* at *1 (granting
attorneys' fees and costs due to the defendants' failure to produce certain source code in
discovery even months after the court entered orders granting the plaintiffs' motion to compel).
However, even in *Proofpoint*, the requested hourly rates ranged from approximately $590 to
$675 per hour for associates, and from approximately $880 to $915 per hour for more senior
attorneys. *Id.* at *3. Here, in contrast, Plaintiffs charged $1,305 per hour (Paul Henderson) and

13

$1,385 per hour (Nicholas Inns) for the associates who performed most of the work and $1,690 per hour (Keith H. Forst) for the lead partner. (Mem. Ex. A-2 at 6.) Even after accounting for inflation and the 15 percent discount applied here, *Proofpoint* does not support the hourly rates requested in this case.

Moreover, the *American Lawyer* and *Bloomberg Law* articles are insufficient to carry Plaintiffs' burden of proof. Plaintiffs have provided no evidence that the hourly rates charged by big law firms with offices located nationwide are a reliable indicator of the hourly rates of litigation attorneys in Richmond, Virginia. *Cf. Grissom*, 549 F.3d at 323 (finding that the Laffey Matrix, which pertains to hourly rates of litigation attorneys in Washington, D.C., is insufficient specific evidence of prevailing market rates in Reston, Virginia, a suburb of Washington, D.C.). Furthermore, the *American Lawyer* article appears to cut against the reasonableness of Plaintiffs' requested fees. *See* Dan Roe, *What $1,000 an Hour Gets You in the Am Law 200 Today*, Am. Lawyer (Mar. 30, 2023), https://perma.cc/46TZ-FSYK ("It's been a while since I was in BigLaw, but K&E billing out a *second-year* associate at $1,035/hr seems outrageous.").

In sum, beyond the affidavit of lead partner Keith Forst, Plaintiffs offered no specific evidence that the hourly rates sought for their attorneys coincides with the prevailing market rates of attorneys in Richmond of similar skill and for similar work. The Fourth Circuit has made clear, however, that "[i]n addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." *Plyler*, 902 F.2d at 277. Thus, Plaintiffs have not made the requisite factual showing to support a rate of $1,690 for partners and $1,305 for associates.

Accordingly, the Court may rely on its own knowledge to determine the reasonable hourly rates in this community for attorneys of comparable skill, experience and reputation. *Rehab. Ass'n of Va.*, 8 F. Supp. 2d at 528. Based on the Court's knowledge about the prevailing rates in Richmond and consideration of the *Johnson* factors, the Court concludes that $400 and $650 constitute reasonable rates for associates and the lead partner, respectively. *See Bethune-Hill v. Va. State Bd. of Elections*, 2020 WL 5577824, at *8–9 (E.D. Va. Sept. 17, 2020) (awarding hourly rates of $400 for an associate and $750 for a partner employed at Perkins Coie in 2019). The time spent by various associates at Quinn Emmanuel will be compensated at a rate of $400 per hour, because Plaintiffs' counsel have not provided information to the Court about the experience level of any of these associates. Finally, the Court will award no fees for the work of paralegals, because Plaintiffs failed to present evidence of the customary rates billed for such in Richmond. *Rehab. Ass'n of Va.*, 8 F. Supp. 2d at 528; *see also Zhang v. GC Servs., LP*, 537 F. Supp. 2d 805, 815 (E.D. Va. 2008) (noting that "purely clerical tasks are ordinarily a part of a law office's overhead and should not be compensated").

### b. Reasonable Hours Expended

The burden rests on the applicant to "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Coward v. Robinson*, 2017 WL 5195868, at *2 (E.D. Va. Nov. 9, 2017) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). To calculate a reasonable number of hours expended, the court must exclude any hours that are "excessive, redundant, or otherwise unnecessary." *Lilienthal v. City of Suffolk*, 322 F. Supp. 2d 667, 670 (E.D. Va. 2004) (quoting *Hensley*, 461 U.S. at 434). Thus, the Court finds it necessary to make the following adjustments to the hours requested.

First, the Court will exclude hours performed by partners and counsel, aside from lead partner Keith Forst, as "excessive, redundant, or otherwise unnecessary." *Lilienthal*, 322 F. Supp. 2d at 670. From June through October 2023, Quinn Emanuel staffed, in addition to a handful of associates, five different partners and counsel[1] on this matter. While their roles appeared to be minimal,[2] these hours are nonetheless excessive, redundant or otherwise unnecessary. First, some tasks carried out by partners could have been delegated to associates. To cite an example, Quinn Emmanuel's associates presumably could have "review[ed the] Report and Recommendation and related emails [with the] QE team." Second, there are instances at which multiple partners appear to have participated in the same tasks, where use of a single partner, or a single partner and associate, would have been reasonable. On August 18, 2023, for instance, four partners engaged in a conference to discuss strategy regarding enforcement of the Settlement Agreement, and on August 20, 2023, three partners appeared to review the same draft judgment. (Mem. Ex. A-4 at 3–4.) While it was Plaintiffs' prerogative to commission or approve such staffing, the Court finds it unreasonable to shift the resulting fees to Defendants when Plaintiffs' case could have been pursued with leaner, less-partner-heavy staffing. *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 53 (S.D.N.Y. 2015). Therefore, the Court will reduce the requested hours to reflect the excessive hours recorded by partners in this case.

---

[1]    These attorneys include Keith H. Forst, Scott L. Watson, Eric D. Winston, Jared W. Newton and Patrick Stafford.

[2]    *See e.g.*, Mem. Ex. A-4 (claiming 2.4 hours for Scott L. Watson, 1.6 hours for Eric D. Winston and 1.5 hours for Jared W. Newton).

Second, the Court will reduce the claimed hours by ten percent due to block billing entries. Plaintiffs' billing records include "block billing" entries,[3] which list multiple activities without delineating the time spent on each activity. *Guidry v. Clare*, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006). Because attorneys are required to maintain billing records with sufficient detail so that the court may determine the reasonableness of the individual activities, "block billing entries are disfavored in attorney's fees award cases." *Denton v. PennyMac Loan Servs., LLC*, 252 F. Supp. 3d 504, 525 (E.D. Va. 2017); *see also Two Men & A Truck/Int'l, Inc. v. A Mover Inc.*, 128 F. Supp. 3d 919, 929 (E.D. Va. 2015) ("It would be futile for this Court to attempt to separate these 'block entries into their constituent tasks and apportion[ ] a random amount of time to each.'"). To remedy for block billing, courts often reduce the fee by a fixed percentage reduction. *Jones v. Southpeak Interactive Corp. of Del.*, 2014 WL 2993443, at *9 (E.D. Va. 2014), *aff'd*, 777 F.3d 658 (4th Cir. 2015). Having evaluated Plaintiffs' billing records, the Court will exercise its discretion to reduce the requested hours by ten percent due to block billing.

### c.   Lodestar Calculation

Based upon the reasonable hours and reasonable rate analysis outlined above, the following table reflects the Court's lodestar calculation:

---

[3]      *See e.g.*, Mem. Ex. A-2 at 4 (reporting 4.6 hours on June 19, 2023 without attributing times to each activity listed).

| Attorney | Hourly Rate | Authorized Hours | Fees |
|---|---|---|---|
| Keith H. Forst | $650 | 27.6 | $17,940.00 |
| Nicholas Inns | $400 | 24.3 | $9,720.00 |
| Paul Henderson | $400 | 43.0 | $17,200.00 |
| Brittany Ruyak | $400 | 13.3 | $5,320.00 |
| Victoria Coleman | $400 | 0.5 | $200.00 |
| **Total Fee Award** | | | **$50,380.00** |

Based on the lodestar calculation, Plaintiffs are entitled to Fifty Thousand, Three-Hundred Eighty Dollars ($50,380.00) in attorneys' fees.

### d. Subtraction for Hours Spent on Unsuccessful Claims Unrelated to Successful Ones

No reduction for unsuccessful claims unrelated to successful claims is appropriate in this case, and Defendants do not argue otherwise. *See McAfee*, 738 F.3d at 88 (requiring the Court to "subtract fees for hours spent on unsuccessful claims related to successful ones"). Here, Plaintiffs prevailed on the Motion to Enforce, and judgment was entered in favor of Plaintiffs. (ECF Nos. 164, 165.) The lead counsel declared that each entry was "review[ed] . . . to ensure that the time billed for each entry was strictly related to enforcement of the Settlement Agreement." (Mem. Ex-A at ¶ 9.) Furthermore, any time entries unrelated to enforcing the Settlement Agreement against Defendants and briefing Plaintiffs' entitlement to attorneys' fees were redacted and excluded from Plaintiffs' request for fees. (Reply Ex. A at ¶ 8.) Given the hours requested by Plaintiffs are all sufficiently related to their enforcement of the Settlement Agreement, the Court will not subtract hours spent on unsuccessful claims unrelated to successful ones.

### e.  Degree of Success

In the final step, a district court must "consider the relationship between the extent of success and the amount of the fee award." *McAfee*, 738 F.3d at 88.  The court will reduce the award if "the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Hensley*, 461 U.S. at 440.  The court must consider whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Id.* at 434.  Here, Plaintiffs successfully demonstrated that they were entitled to a $6,000,000 judgment, and a fee award of $50,380.00 is justified in relation to the extent of Plaintiffs' success.  Therefore, the Court will not reduce the fee award at this step.

### f.  Fees-on-Fees

As to Plaintiffs' request for "fees-on-fees," Plaintiffs have not established that they are entitled to recover for time spent defending their entitlement to attorneys' fees. *See Daly v. Hill*, 790 F.2d 1071, 1079 (4th Cir. 1986) ("The burden of proving entitlement to compensation . . . rests with the prevailing attorneys.")  While courts have allowed recovery for fees-on-fees in instances where the right to recovery attorneys' fees was created by statute,[4] Plaintiffs have not presented any Fourth Circuit precedent authorizing fees-on-fees pursuant to the bad-faith exception.  Nor have Plaintiffs argued that a contractual provision in the Settlement Agreement specifically provides for the recovery of such fees-on-fees.  Furthermore, as Plaintiffs argue for the first time in their Reply that they are entitled to fees-on-fees,[5] Defendants have had no

---

[4]     *See e.g.*, *Lismont v. Alexander Binzel Corp.*, 47 F. Supp. 3d 443, 455 (E.D. Va. 2014) (awarding fees under Federal Rule of Civil Procedure 37); *Trimper v. City of Norfolk*, 58 F.3d 68, 77 (4th Cir. 1995) (stating that "it is well settled that the time spent defending entitlement to attorney's fees is properly compensable under § 1988").

[5]     In their Memorandum (ECF No. 171), Plaintiffs argue that "Plaintiffs should be awarded their fees and expenses of $150,071.68 through August 2023, as well as those in September,

opportunity to respond to Plaintiffs' request of an additional Seventy-Thousand, Eight-Hundred Eighty-Seven Dollars ($70,887.00) in fees. Accordingly, the Court finds that Plaintiffs are not entitled to recover fees that were incurred in prosecuting their claim for attorneys' fees.

### g. Costs

In addition to attorneys' fees, Plaintiffs seek costs in the amount of One-Thousand, One-Hundred Eighty Dollars and Seventeen Cents ($1,180.17) for expenses such as online research, local business travel and document reproduction. The Court finds the majority of the expenses reasonable and will include them in the award. *See Landwehr v. AOL, Inc.*, 2013 WL 1897026, at *6 (E.D. Va. May 1, 2013) (awarding litigation costs such as travel, filing fees, copying costs, document discovery and online research); *Burns v. Anderson*, 2006 WL 2456372, at *11 (E.D. Va. Aug. 22, 2006) (awarding $18,677.80 for "Westlaw Services" and noting that "[i]f [the firm] normally bills its paying clients for the cost of online research services, that expense should be included in the fee award").

The Court also finds, however, that certain expenses cannot reasonably be charged to Defendants without further documentation. While "local business travel" and "air travel" in August 2023 constitute reasonable expenses given the hearing held on August 18, 2023 regarding the Motion to Enforce, Plaintiffs have not provided adequate details as to "local business travel" in June 2023, (Mem. Ex. A-2 at 7), and "hotel" in July 2023. (Mem. Ex. A-3 at 7.) As such, the Court will deduct these expenses, which amount to Two-Hundred Eighty-Eight

---

incurred in enforcing the settlement." (Mem. at 4.) Plaintiffs further indicate that they will "supplement their request with fees and expenses incurred in September 2023." (*Id.* at 4 n.1.) In their Reply, however, Plaintiffs not only request an additional $15,682.50 related to enforcing the settlement, but they also request $70,887.00 in fees related to briefing Plaintiffs' entitlement to attorneys' fees. (Reply at 9.)

Dollars and Thirty-One Cents ($288.31), from the claimed amount of costs. Thus, Plaintiffs are entitled to Eight-Hundred Ninety-One Dollars and Eighty-Six Cents ($891.86).

### III.    CONCLUSION

For the reasons set forth above, the Court will GRANT IN PART and DENY IN PART Plaintiffs' request for prejudgment interest and attorneys' fees and costs. The Court will GRANT an award of prejudgment interest at an annual rate of six percent. However, Plaintiffs are entitled to prejudgment interest starting June 9, 2023 — the date that the payment became overdue — until judgment was entered on September 19, 2023. In addition, the Court will GRANT a reduced award of Fifty Thousand, Three-Hundred Eighty Dollars ($50,380.00) in attorneys' fees and Eight-Hundred Ninety-One Dollars and Eighty-Six Cents ($891.86) in costs, for a total of Fifty-One Thousand, Two-Hundred Seventy-One Dollars and Eighty-Six Cents ($51,271.86) in attorneys' fees and costs.

An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

_____/s/_____

David J. Novak
United States District Judge

Richmond, Virginia
Dated: November 14, 2023